1818.

KIRK
v.
HODGSON.

KIRK *against* HODGSON and others.

June 15,
July 2.

Where co-partners in trade engaged a *clerk*, as bookkeeper and cashier, at a fixed salary, for two years, with an understanding that he should have a larger compensation as the business extended and his duties increased; and during the third year it was discovered that the clerk and overdrawn moneys belonging to the firm, and applied the same to his own use, of which he afterwards rendered a statement; but a majority of the partners, afterwards, continued him in their employ : *Held,* that he was entitled to an increased compensation for his services after the second year, the fact of continuing him in service, after a discovery of his improper conduct, being an admission that he had not forfeited his right to an increased allowance. The act of a majority of the partners of a firm, binds the rest.

IN 1813, *Eastburn, Kirk* and *Downes*, entered into partnership as booksellers, and employed the defendant, *Hodgson* as a clerk, and as their *bookkeeper* and *cashier*,

at a salary of 500 dollars for the first year, and 600 dollars for every subsequent year; and he continued in that employment until the filing of the original bill against him, on the 10th of *April*, 1816, and which stated, that, on the 2d of *April*, 1816, the plaintiff, *K.*, having examined the books of account, with a view to ascertain the state of the accounts, discovered a large deficiency. That the defendant, on application, made a statement, in which he set forth, 3,917 dollars and 84 cents, which he had loaned to himself, and secretly appropriated to his own use, and had not entered the same in the books, &c. The bill also stated, that *H.* was about to leave the state, and prayed for a discovery, and an account, and for a writ of *ne exeat.* On filing this bill, in the name of *E.*, *K.* and *D.*, and which was sworn to by *K.*, the defendant, H., was held to bail in the sum of 2,600 dollars.

*Eastburn*, who acted for himself, and *Downes*, who was absent, refusing to permit their names to be used as plaintiffs against *H.*; *K.*, on the 4th of *May*, 1816, filed a supplemental and amended bill against *H.*, *E.* and *D.*, in which he charged, that the greater part of the sum taken by *H.* was with the privity and connivance of the defendant *E.*, and to deceive the plaintiff; and that *H.* was induced not to make the entry of the said sum, for the purpose of deceiving the plaintiff as to the state of the partnership funds. That *E.*, claiming to act for himself and *D.*, continues still to employ *H.* as a clerk of the firm, &c.

Prayer for a discovery, and that the defendant, *E.*, may be directed to discharge the defendant *H.*, from the employment of the firm, and that a *receiver* of the property and moneys of the firm may be appointed, and that the defendants may come to an account with the plaintiff, &c.

The answer of *Eastburn* admitted the employment of *H.*, as clerk, at a salary of 500 dollars for the first, and 600 dollars for the next year, with an understanding,

however, that his salary should be increased with the increase of business, and of his services. That the deficit in the cash account was discovered in *March*, 1816; but *H.* being absent, did not learn, until *April* 3d, 1816, that the deficit was wholly occasioned by the overdrawing of *H.*, who then exhibited a statement, by which it appeared, that he had taken, and not charged in the ledger, 3,917 dollars and 84 cents, and had taken and charged 653 dollars and 18 cents—making 4,571 dollars and 2 cents; and had charged his salary for three years at 1,700 dollars, and 400 dollars for the board of *E.*, *K.* and *B.*

The defendant *E.* denied all knowledge, of the moneys but what he derived from the account exhibited by *H.*, and the schedule annexed: He denied all collusion with *H.*, and any knowledge, or even suspicion of the overdrawing by *H.*, until informed as aforesaid; and he averred, that no part of the money, so taken by *H.*, was ever applied to the use of the defendant *E.* That, after the discovery of the fact of its being so taken, he continued *H.* in the service of the firm, but took the management of the cash concerns in his own hands. That he believed that the morals of *H.* were not depraved, but that he was led to overdraw from negligence in his private concerns, coupled with the expectation of an increased allowance for his services, rather than from any intention to deceive. That the defendant, *D.*, was then in *Europe*, and had left the defendant, *E.*, a full power of attorney, dated 29th *November*, 1815, to act in his name, and for him.

The defendant, *Downes*, also put in his answer, on the 1st of *June*, 1817, which agreed with that of *E.*

The defendant, *H.* in his answer admitted the overdrawing by him, but denied that it was done secretly, or with any fraudulent views, but under circumstances he deemed excusable. That he was assured by *E.* that, after his second year, his salary should be enlarged, as the business extended, and his duties increased; that the business

increased and his services were very great, and that he continued to perform his services from a conviction that he should receive an increased compensation; that he had no idea that he had overdrawn to so large an amount, until in *March*, 1816, when he discovered it to his astonishment, but believed that the firm would allow him an increase of salary equal to the deficit. That his salary ought to have exceeded 1,000 dollars per annum, and, also, a compensation for extra services.

Several witnesses were examined in the cause, which was brought to a hearing the 15th of *June*.

*T. A. Emmet*, for the plaintiff.

*Wells* and *Bristed*, contra.

THE CHANCELLOR. This is a suit by one of the three copartners of the late firm of *Eastburn, Kirk & Co.*, against the other two copartners, and against their clerk and book-keeper. *Hodgson*, the clerk, is charged with a breach of trust in secret and unauthorized appropriations of money; and *Eastburn*, one of the copartners, acting in the name of himself and the other partner, *Downes*, is charged as an accomplice, and that the moneys were taken with his privity and connivance, and for his use.

The defendants have all answered, and proof has been taken. The charges as to the clerk are admitted, but there is no proof of any of the injurious allegations against *Eastburn*; nor have they even been attempted to be proved. There is no ground for any decree as against him, and he is justly entitled to the costs of his defence. It is stated, and admitted, that *Eastburn* acted in the name, and on the behalf of *Downes*, who was then absent in *Europe*, and that he thus united in himself the powers of a majority of the firm, but the charges in the supplemental bill of privity and connivance on the part of *Eastburn* are confined to

1818.

KIRK
v.
HODGSON.

*June 15th.*

*July 2d.*

him individually, and do not refer to his representative character. They are *personal* accusations, and though the plaintiff is justly chargeable with costs for having made them, there does not seem to be the same reason why he should pay costs also to the defendant *Downes.* He is not implicated in the allegations, and he was of necessity made a party defendant, since his agent and partner, *Eastburn,* refused to permit either of their names to be used as complainants.

The only real question in the case is, as to the allowance to *Hodgson,* and what special directions ought to be given to the Master, in taking and stating the account against him.

There is no dispute as to the amount of moneys which *Hodgson* has received, and must account for. It was fully and frankly disclosed by him when the discovery of his overdrawings was first made. It is also agreed, that his certain salary was 500 dollars for the first year, and 600 for each of the two succeeding years, but there was also encouragement given, and assurances made, of an increase of compensation. The defendants, *Eastburn* and *Downes,* admit, in their answers, that there was an understanding with him when he was employed, that his salary should be increased with the increase of business, and of his services. It is also proved by *Eastburn,* in his testimony as a witness, that he proposed to the present plaintiff, that *Hodgson* should have an increase of salary as the business increased, and the plaintiff agreed to the proposition, and this proposal he then communicated to *Hodgson.* Another witness (*Wm. B. Gilley*) has heard the plaintiff say, that *Hodgson* ought to have a larger salary, and that the one originally agreed on was inadequate. The same admissions of the plaintiff were also made to *Wm. Van Hook.* After these acknowledgments of all the partners, and after these assurances originally given to *Hodgson,* there can be

1818.

KIRK
v.
HODGSON.

no doubt of his claim to a compensation for the two last years, beyond the original stipulated sum.

Not only the increase, but the amount of that increase has also been ascertained and admitted. The witnesses, *Gilley and Van Hook*, both think, that the present plaintiff mentioned to them the sum of 1,000 dollars, as the proper salary allowance, and *Eastburn* says also, that the services of *Hodgson*, were worth that sum. The admissions and proof are uniform and abundant in favour of his great, incessant and laborious services, as clerk. A witness examined on the part of the plaintiff, (*D. D. Arden*) says, that there is no general rule about the salaries of clerks in bookstores; that he thinks 600 dollars "a very moderate" compensation; that *Hodgson* devoted 14 hours a day to his duty, and earned 1,000 dollars a year.

I have no doubt, therefore, of the just title and equitable claim of the defendant, *Hodgson*, to an increased allowance to 1,000 dollars, unless that title and claim have been lost by his breach of trust. I was strongly inclined to think, upon the argument, that the defendant *Hodgson* had forfeited that claim, but upon a more mature examination of the case, I do not now think so. A majority of the firm continued him afterwards in their employment, and this fact is decisive in favour of the continuance of his rights. It is evidence, also, that he had not forfeited their confidence, and that the overdrawings charged and confessed, were not understood by them to be acts of intentional fraud. They cannot be set up by the firm of *Eastburn, Kirk & Co.*, against his claim, founded on their promises and acknowledgments, and his services. That firm had a perfect right to continue him, if they thought proper. They were the best judges of the case, under all its circumstances, and they are estopped from setting up these acts of his, as ground of discharge to themselves, from prior and just engagements.

It is true that the plaintiff, as one of that firm, did not

agree to continue *Hodgson* as clerk, but the majority of the firm had an equal right to exercise their judgment, and to continue him. The act of the majority must govern in these little communities, as well as in every other, unless special provision be made to the contrary. Where the major part of the part owners of a ship, settled an account of the profits, it was held to conclude the rest. (*Robinson* v. *Thompson*, 1 *Vern.* 465.) All that can be required is *good faith* in the discharge of copartnership duties, and there is nothing in this case to impeach it.

I shall, therefore, direct, that the Master allow to the defendant *Hodgson*, a salary of 1,000 dollars a year, for the last two years, instead of the 600 dollars originally stipulated. With respect to the charges of *Hodgson*, for boarding the plaintiff, and the defendant, *Eastburn*, and Messrs. *B.* and *J.*, the Master is to inquire whether the whole or what part of these charges have been included in the settlement of the copartnership accounts of *Eastburn, Kirk & Co.* by the arbitrators to whom these accounts were referred, and to admit such of them as have been allowed by the arbitrators. The Master is, also, to be directed to take and state an account of the separate interest of the plaintiff in the balance that may be found due from the defendant, *H.*, to the house of *E. K. & Co.*, and of the separate interests of the defendants, *E.* and *D.*, and report thereon.

Decretal order accordingly.